No. 80-408

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

IN RE THE MARRIAGE OF

VIRGINIA LOUISE KNOWLTON,

                Petitioner and Appellant,

    -vs-

ORA GALE KNOWLTON,

                Respondent and Respondent.

Appeal from:  District Court of the Second Judicial District,
In and for the County of Silver Bow, The Honorable
James D. Freebourn, Judge presiding.

Counsel of Record:

    For Appellant:

        W. D. Murray, Jr., Butte, Montana

    For Respondent:

        Dunlap & Caughlin, Butte, Montana

Submitted on Briefs: March 26, 1981

Decided: August 11, 1981

Filed: **AUG 11 1981**

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Virginia Knowlton (the mother) appeals from an order of the Silver Bow County District Court dismissing contempt proceedings against Ora Gale Knowlton (the father) and from an order changing custody of two of their five children from the mother to the father.

The parties were divorced in 1978. The support agreement merged with the decree, provided among other things, that the father would provide the wife and children "with two full beef cattle per year for the use of the family." The father was also to have the beef cut, wrapped and delivered to the mother's residence. This proceeding started because the father failed to provide the two beef per year as required by the decree. The mother filed an affidavit alleging the father's failure to provide the beef together with a motion asking that the father be held in contempt of court.

The father countered by asking for custody of two of the children. A daughter, age 15, lived with him during the summer of 1979, and all of the following year, with the mother's acquiescence. A son, age 13, lived with the father during the summer of 1980, and apparently desired to continue to live with the father. Only the attorneys signed the father's pleadings, which recite no evidentiary facts, only bald conclusions.

The father failed to comply with section 40-4-220(1), MCA, which requires that the party seeking modification of a custody decree:

> ". . . shall submit, together with his moving
> papers, an affidavit setting forth facts
> supporting the requested order or modification
> and shall give notice, together with a copy
> of his affidavit, to other parties to the proceeding,
> who may file opposing affidavits . . ."

In no uncertain terms, this same statute sets out the duty of the District Court if the affidavit fails to establish on its face a basis for holding a hearing:

". . . The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits, in which case it shall set a date for hearing on an order to show cause why the requested order or modification should not be granted." Section 40-4-220(1), MCA.

Both parties and the trial court ignored this statute and a hearing was held on the merits. In broad, conclusory findings, the trial court found that a basis was made to change custody, and therefore granted custody of the 15 year old girl and the 13 year old boy to the father. Because the parties and the trial court failed to abide by section 40-4-220(1), and even though this issue was not raised on appeal by either party, we have no alternative but to set aside the order granting modification of custody. Based on section 40-4-220(1), there was no basis set out by which the trial court could proceed to a hearing on the merits.

The question of beef support, however, presents a different problem. The father admits he did not furnish the beef as provided for in the decree. He alleged, however, that when asking for custody of two of the children, that the beef support decree be modified to reflect the changed circumstances if he should get custody--that is, the mother would not need as much beef for three children as she would for all five children. To this proposition, the mother responded by asking that the beef support decree be modified by converting it into a decree providing for additional monetary support for the children. The mother also suggested a formula for the conversion.

The trial court dismissed the contempt proceedings, and also in effect ruled that the father did not have to make up

the past beef support arrearages. Although we do not here address the mother's contention that the trial court should have found the father in contempt for failure to provide the beef supports, we do hold that the trial court had no right to excuse the father from his accrued beef support obligations. In Williams v. Budke (1980), ____ Mont. ____, 606 P.2d 515, 37 St.Rep. 228, we held, among other things, that district courts cannot modify a delinquent child support obligation (606 P.2d 518-519). That obligation, therefore, is still owed. We do not view beef support obligations different than we view child support obligations. Therefore, the trial court must enter an order compelling the father to comply with the accrued beef support obligations.

The father argued he couldn't comply with the decree that he was to provide the family with two beef per year. If it is so, then we suggest that an appropriate action is to require the father to provide his family with additional money equal to the price of the beef he failed to provide.

We again refer to the child custody modification proceedings. Time and again, we have urged counsel to observe the statutory procedures involved. Because of the failure here, all concerned suffer--except counsel.

Because of the fact that the father has now had custody of the girl for two years and the boy for one year, circumstances may justify a change in custody. If those circumstances exist, the trial court's jurisdiction to hear a request for modification of custody is contingent upon the filing of a properly verified petition to modify custody, setting out the evidentiary facts required to move the trial court's discretion. See, section 40-4-220(1), MCA, supra. We cannot condone the inadequate procedures used at the trial

-4-

court level when the result is to have the case dumped on this Court in such a procedural mess that we cannot reach the issues on the merits. The long-term effects certainly hurt the public, but the short-term effects always hurt the parties. That is unfair, and they should not have to suffer because of the errors of counsel.

We suggest in this case, therefore, that in future proceedings, counsel for both sides do not charge their clients for the services rendered. If they do, it means only that the parties must pay double for services rendered: first, for the initial proceedings; and, second, for the proceedings necessitated because of the errors of counsel.

The order is vacated and this cause is remanded for proceedings consistent with this opinion.

_____
Justice

We concur:

_____

_____

_____

_____
Justices